IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY D'ANGELO,<br>     Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 25-CV-5330 |
| THE SCHOOL DISTRICT OF<br>PHILADELPHIA,<br>     Defendant. | :<br>:<br>:<br>: |

## MEMORANDUM

**KENNEY, J.**                                                                                               **NOVEMBER 21, 2025**

In a prior Memorandum and Order, the Court granted Guy D'Angelo leave to proceed *in forma pauperis* and dismissed without prejudice the Complaint he filed against the School District of Philadelphia asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") because he failed to comply with Federal Rules of Civil Procedure 8 and 10. *D'Angelo v. Sch. Dist. of Philadelphia*, No. 25-5330, 2025 WL 2724385 (E.D. Pa. Sept. 24, 2025) ("the September Memorandum"). D'Angelo was permitted an opportunity to file an amended complaint. He has now returned with an Amended Complaint (ECF No. 12) naming the School District and ten of its employees.[1] For the following reasons, the Amended Complaint will be dismissed and D'Angelo will again be granted leave to amend.

---

[1] The individual employees named as Defendants are Chief Talent Officer Kaylan Connally, Deputy COO Teresa Fleming, Garage Supervisor Nadine Miller, Bus Dispatcher Antonio Wynn, Hearing Officer Sheila Wallin, District Counsel Michael Sheehan, Esq., Hearing Officer Rudolph Garcia, Esq., Shop Steward Charnel Brownlee, District Physician Dr. Jones, and Leave Specialist Dawn Reynolds. (Am. Compl. at 1.)

I.      PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[2]

D'Angelo's original Complaint consisted of the form available to *pro se* litigants to file employment discrimination claims as well as numerous other materials that he submitted on a thumb drive. By checking boxes on the Complaint form, D'Angelo appeared to assert claims based on a failure to accommodate his disability, failure to stop harassment, unequal terms and conditions of his employment, and retaliation. (Compl. at 3). Under the "Other" box, he added "unlawful suspension without pay that might lead to termination, and not managing according to the conditions in the 32BJ/Local 1201 Collective Bargaining Agreement." (*Id*.) In the section of the form that asked D'Angelo to provide the facts underlying his claims, D'Angelo listed numerous other documents that he submitted to the Clerk of Court on the thumb drive, but stated no actual facts. (*Id*.; ECF No. 5.) Attached to the Complaint was a copy of a Right to Sue letter from the EEOC. (Compl. at 6.) The Complaint contained no narrative description of any events giving rise to D'Angelo's claims. The thumb drive contained numerous documents, including spread sheets, flow charts, and other voluminous non-narrative data. (ECF No. 5.) D'Angelo did not separately file any of the data he put on the thumb drive.

In the September Memorandum, the Court determined that D'Angelo's claims could not proceed because merely checking boxes on the form indicating the nature of the claims he sought to assert without providing any narrative description in numbered paragraphs of the facts that supported the elements of those claims was insufficient to make those claims plausible. September Memorandum, 2025 WL 2724385, at *3. The Court noted specifically that, although he checked the box indicating he sought to bring an ADA claim, he failed to allege that he was

---

[2] Unless otherwise indicated, the facts are taken from D'Angelo's Amended Complaint (ECF No. 12), for which the Court adopts the pagination supplied by the CM/ECF docketing system.

disabled, the nature of the disability, and how the disability formed the basis for his claim. *Id.* at n.3. Likewise, although he checked the box indicating he sought to assert a Title VII claim, he did not identify any basis covered by the Act upon which he claims he was discriminated against. *Id.*

In the Amended Complaint, consisting of the Court's form and attachments, D'Angelo again checked boxes indicating that he seeks to assert Title VII and ADA claims (Am. Compl. at 1), based on a failure to accommodate his disability, failure to stop harassment, unequal terms and conditions of employment, retaliation, and an unlawful suspension without pay that might lead to termination. (*Id*. at 2-3.) In that same section he also asserts that the Defendants are "not managing a unionized employee according to the collective bargaining agreement." (*Id.* at 3.) Nowhere on the form does D'Angelo indicate his race, color, national original, or the nature of any disability.

In his attachment, which does not present facts in chronological order and is therefore not entirely clear, D'Angelo alleges that Nadine Miller recommended that he be terminated because he did not accept a position offered to him in response to a requested accommodation. (*Id*. at 6.) The position offered was as a part-time van driver, but he previously held a full-time position, and D'Angelo deemed this to be a voluntary demotion. (*Id*.) There was no other discussion to explore accommodations even though he mentioned it would be a financial hardship to accept a part-time position. (*Id*.) He received no explanation why another option was not presented to him. (*Id*. at 6, 7, 26.) D'Angelo claims that "[t]his set of circumstances is a violation of the Collective Bargaining Agreement" ("CBA") but his shop steward, Defendant Brownlee, did not represent him during a conference and second level hearing, inform him of his rights, or give him

a copy of the CBA. (*Id*. at 7.) Although he has paid union dues since August 2022, Defendant Brownlee never introduced herself and never informed him about the CBA. (*Id*. at 11.)

At an unstated time, D'Angelo had "requested the EEOC to review the circumstances . . . related to women greeting [him] using words that [he] considered romantic in nature, as well as having intimate sexual meanings," including "baby, honey, sweetie, and sugar." (*Id*. at 7.) The EEOC closed that inquiry without action and, thereafter, Defendant Bus Dispatcher Antonio Wynn told D'Angelo "That's the way it is around here, get used to it." (*Id*. at 8.) D'Angelo also makes allegations concerning unauthorized eavesdropping by unnamed individuals of his work G-mail account, that "seemed to coincide with retaliatory management practices and actions directed toward [him]." (*Id*. at 8 (citing *id.* at 27-31 (email device access records)).) He also noticed the occurrence of pop-up windows while using his cell phone and asked for an investigation. (*Id*. at 8-9.) D'Angelo claims he noticed a sweet taste in his mouth when he opened a locked storage container on July 5, 2024 and discovered "orange crystals at the bottom" that were hot to the touch. (*Id*. at 9.) He reported the incident to his apartment manager in order to learn if others had accessed his unit and he was told that only his key fob had been used on his apartment door lock. (*Id*. at 10.) He suspects that his fob was copied using equipment available through Amazon and that equipment to tap into telecommunications networks is also available to be purchased. (*Id*.)

Two weeks after his first union dues were collected, D'Angelo "was forced to go on [a] long term leave of absence because of poor working conditions." (*Id*. at 11.) Although the CBA provides protections and guidelines for handling this situation, Garage Supervisor Nadine Miller "intentionally concealed the identity of the shop steward . . . to foster a hidden agenda." (*Id*.) Miller recommended that he be terminated for failing to obey her directive to let the District's

4

physician perform an annual physical examination so that he could be issued a School Bus Driver's Medical Certificate.  (*Id*. at 12.)  He claims her directive violated District policy, the CBA, PennDot regulations, and the Pennsylvania Administrative Code.[3]  (*Id*. (citing *id.* at 62-80)).)  D'Angelo asserts that he satisfied the condition described in the District policy and attached to the Amended Complaint copies of a commercial driver's license, PennDOT Medical Examiners Certificate, his physical examination certificates dated December 14, 2023 and July 16, 2024, and a PennDOT re-certification he claims is dated July 2026.  (*Id*. at 12, 81.)

He was directed by Defendant Miller to report for work starting on December 18, 2022 and he requested routes to drive that morning.  (*Id*. at 12.)  Bus Dispatcher Antonio Wynn informed him that his medical certificate was "not recognized because it was not issued by the School District's physician," and he was permitted only to work and remain in the driver's lounge or ride along with other drivers.  (*Id*.)  He filed non-vehicular incident reports about this but Miller told him to stop filing them.  (*Id*.)

Miller instructed him to return to work on December 18, 2023 after reviewing the credentials D'Angelo provided to her on December 15, and he began to "work on a more regular basis after [his] long-term leave of absence."  (*Id*. at 14.)  Miller allegedly shorted his pay by five

---

[3] The District policy attached to the Amended Complaint states that "a driver must be fit to operate a school bus and commercial motor vehicle to ensure the health and safety of students being transported." (Id. at 62.) It provides that prior to employment by the District, and at least once a year, the District must obtain a "copy of a Commonwealth of Pennsylvania School Bus Driver's Physical Examination Form from the covered school bus driver." (Id. at 65.) The Pennsylvania School Bus Driver's Manual section attached to the Amended Complaint states that, to maintain a valid school bus endorsement, a driver "must pass a physical examination given every 13 months by either your physician or a physician appointed or approved by the local school board." (Id. at 72.) The Pennsylvania Code section attached to the Amended Complaint provides that a "physical examination shall be given by a school transportation medical practitioner, a physician, a chiropractor, a CRNP, or a physician assistant . . . ." (Id. at 73 (attaching Pa. Code Tit. 67, § 73.1).)

days of holiday pay in December 2022. (*Id.*) In May 2024, Miller insisted that he submit to an annual physical to be performed by a District physician. (*Id.*) D'Angelo refused and, later during the same pay period, Miller refused to acknowledge his call-in request to use paid time off. (*Id.*) His pay statement contained a "Sick Leave No Pay" entry for 1.5 days and Wynn told him that Miller changed his request for paid time off. (*Id.*)

In May 2024, D'Angelo provided his driving credentials in order to validate them and prepare for the summer school bus route bid process. (*Id*. at 13.) That is when Miller instructed him to let the School District's physician perform a physical examination. (*Id*.) D'Angelo refused because, he claimed, he already had a valid medical certificate, leading Miller to "begin using retaliatory management tactics that include[d] recommending [that he] be terminated." (*Id*.) Brownlee did not inform him of his rights, give him a copy of the CBA, and did not diligently represent him. (*Id*.) Also attached to the Amended Complaint is a "Statement of Charges and Notice of Right to Hearing" prepared by the District stating that on May 14, 2024 Miller issued D'Angelo a "204 Unsatisfactory" document because on November 7, 2023 he returned from long-term leave and failed to report for a physical, he did not accept a position available to him on May 14, and, after he again approached Miller about an assignment, he again failed to submit to a physical. (*Id*. at 23.)

Defendant Hearing Officer Rudolph Garcia, Esq., allegedly denied D'Angelo the ability to present witnesses at a Board hearing, attempted to prevent him from presenting evidence about his union membership, permitted Defendant Hearing Officer Sheila Wallin to leave early for a doctor's appointment thus limiting the time D'Angelo could question her, "time boxed" the portion of the hearing available for him to present his case, and engaged in side bar conversations with District Counsel Michael Sheehan, Esq. prior to permitting D'Angelo to

present his case.  (*Id*. at 15.)  Sheehan complained about the volume of evidence D'Angelo sought to introduce, the need to refute each piece of evidence, and objected to almost every piece of evidence.  (*Id*. at 15-16.)  Garcia allegedly "initially favored those objections until [D'Angelo] challenged that 'strategy.'"  (*Id*. at 16.)  Hearing Officer Sheila Wallin and Chief Talent Officer Kaylan Connally, Sheehan, and Garcia all upheld Miller's recommendation that he be terminated.  (*Id*.)

District Physician Dr. Jones, and Leave Specialist Dawn Reynolds failed to recommend that D'Angelo file a worker's compensation claim.  (*Id*. at 16-17.)  Jones had reviewed medical records to monitor D'Angelo's "recovery process" and Reynolds failed to "engage in an interactive process required to select an appropriate accommodation" even after he requested that she search beyond the van driver role as a possible accommodation.  (*Id*. at 17.)  Bus Dispatcher Antonio Wynn repeatedly told him to just use sick time.  (*Id.* at 18.)  Wynn, who was previously a bus attendant, is suspected by D'Angelo to have obtained his dispatcher job as an accommodation request, although the relevance of this allegation is unexplained.  (*Id*.)

As relief on his claims, D'Angelo seeks reemployment, lost wages, seniority and benefits, and a reasonable accommodation.  (*Id*. at 19.)  He also seeks lost revenues from his "consulting business" of $3.72 million.  (*Id.*)

## II.    STANDARD OF REVIEW

Because D'Angelo has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a pleading fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the Amended Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned pro se litigants[.]'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

In the September Memorandum, the Court instructed D'Angelo that, in order to allege a plausible discrimination claim under Title VII, he must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1)

that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position the plaintiff held or sought, (3) that the plaintiff suffered an adverse employment action, and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination." *D'Angelo*, 2025 WL 2724385, at 3, n.3 (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir.1998)).  For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Id.* (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted)).  The Court also instructed D'Angelo that to state a claim for employment discrimination under the ADA, a plaintiff must allege that he has a disability within the meaning of the ADA, he was "'otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer[;]' and he 'suffered an otherwise adverse employment decision as a result of discrimination.'" *Id.* (quoting *Morgan v. Allison Crane & Rigging LLC*, No. 23-1747, 2024 WL 4033125, at *3 (3d Cir. Sept. 4, 2024) (quoting *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020))).  A person is disabled within the meaning of the ADA if they: (1) have "'a physical or mental impairment that substantially limits one or more' of their 'major life activities'; (2) have 'a record of such an impairment'; or (3) are 'regarded as having such an impairment.'" *Id*. (quoting 42 U.S.C. § 12102(1)).  Because D'Angelo's Complaint was entirely devoid of any narrative description indicating how he suffered discrimination or retaliation, it had to be dismissed for failing to comply with Rules 8 and 10.  *Id*. at *3.

D'Angelo's Amended Complaint also fails to allege plausible Title VII and ADA discrimination claims. Stated simply, D'Angelo failed to follow the Court's instructions and plead facts to show a plausible claim under either provision. While he provides a great deal of narrative description of the incidents he encountered in his employment to attempt to show that he was qualified for a position and suffered an adverse employment action to support a Title VII claim, his claim is not plausible because he failed to allege that that he is a member of a protected class and any circumstances of the adverse employment action giving rise to an inference of discrimination related to his membership in a protected class. *See, e.g.*, *Favors v. Sec'y United States Dep't of Veterans Affs.*, 695 F. App'x 42, 44 (3d Cir. 2017) (*per curiam*) (affirming dismissal of Title VII race discrimination claim where plaintiff "included no allegations whatsoever linking his termination to his race"). For the ADA claim, he has failed to allege that he has a disability within the meaning of the ADA. These claims cannot, accordingly, proceed.

The retaliation claim is also not plausible. Perhaps in an effort to allege a retaliation claim, D'Angelo contends that, at an unstated time, he had "requested the EEOC to review the circumstances . . . related to women greeting [him] using words that [he] considered romantic in nature, as well as having intimate sexual meanings," including "baby, honey, sweetie, and sugar." (Am. Compl. at 7.) The EEOC closed that inquiry without action and, at some point thereafter, Defendant Bus Dispatcher Antonio Wynn told D'Angelo "That's the way it is around here, get used to it." (*Id*. at 8.) These allegations fail to allege plausibly that a causal link exists between the protected conduct and D'Angelo's termination.

"When assessing causation, courts must be 'mindful of the procedural posture of the case.'" *Bullock v. City of Philadelphia*, No. 19-1183, 2020 WL 4365601, at *5 (E.D. Pa. July

10

30, 2020) (quoting *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).) The standard for alleging causation plausibly in a complaint versus establishing a *prima facie* case at summary judgment is different. *Bullock*, 2020 WL 4365601, at *5 (citing *Connelly*, 809 F.3d at 788). For example, temporal proximity is less skeptically viewed at the preliminary review of a complaint. *Id.* When conducting a statutory screening or evaluating a motion to dismiss a Title VII retaliation claim, the Court will not focus exclusively on temporal proximity, but rather "make the more generalized inquiry into" whether a plaintiff's protected activity was the likely reason for the adverse action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir. 1997). In the absence "of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct" or an evaluation of the allegations as a whole may give rise to the inference of causation. *Id*. at 177 (citing *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir.1993)).

Even under this permissive standard, D'Angelo's retaliation claim cannot proceed. D'Angelo does not allege how his EEOC complaint about sexually suggestive comments by coworkers is causally related to his termination or any other adverse action. He does not allege how, if at all, Wynn was involved in any adverse employment decision, whether anyone who was involved in the protected activity was also involved in an adverse decision, any pattern of antagonism following the protected conduct, or allege any temporal proximity between the two. Rather, he asserts that his termination was due to his employer's refusal to accept his proffered medical certification and insistence that he submit to a physical examination by a District physician, which he refused to do. (Am. Compl. at 13.) He also alleges that Nadine Miller recommended that he be terminated because he did not accept a position offered to him in response to a requested accommodation. (*Id*. at 6.) His retaliation claim based on the EEOC

filing is, accordingly dismissed. *Accord*, *Johnson v. Philadelphia Police Dep't*, No. 14-1036, 2014 WL 12639389, at *2 (E.D. Pa. June 19, 2014) (dismissing retaliation claim stating that, where there is no direct evidence of causation "the temporal proximity must either be unusually suggestive of retaliatory animus, or be accompanied by additional evidence. Plaintiff does not provide any facts that could plausibly establish causation. He summarily states that he filed a complaint at some unidentified time in the past, which he asserts resulted in his failure to be hired."); *see also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997) ("[T]he mere fact that adverse employment action occurs after a [protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

There is an additional problem with the Amended Complaint. While D'Angelo originally named the District as the Defendant, in the Amended Complaint he has named ten of its employees as well. Title VII makes it unlawful for an "employer" to discriminate. 42 U.S.C. § 2000e-2(a)(1). D'Angelo may not, therefore, assert claims under Title VII against individuals who are not his employer, including any coworkers or supervisors. An "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, holding the term "employer" as used in Title VII does not encompass individual employees. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996). The ADA's anti-retaliation remedy, 42 U.S.C. § 12203(a), is also unavailable in employment-related disputes against non-employer defendants. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999); *Lantz v. Hosp. of*

*Univ. of Pennsylvania*, No. 96-2671, 1996 WL 442795, at *6 (E.D. Pa. July 30, 1996) ("The majority of decisions in this circuit have also held that individual non-employers cannot be held liable" under the ADA.). Accordingly, the Title VII and ADA claims against the non-employer Defendants will be dismissed with prejudice.

### IV. MOTION TO USE A PSEUDONYM

D'Angelo originally filed his documents under seal. (ECF No. 4.) The Court directed the Clerk to unseal this case because there was no cause to seal it under Local Rule of Civil Procedure 5.1.5. September Memorandum, 2025 WL 2724385 at *4. With his Amended Complaint, D'Angelo has filed a motion to proceed under a pseudonym, asserting that he needs this protection because of the alleged eavesdropping on his work email account, suspicious hacking of his cell phone, the mysterious orange crystals (which in the Motion he claims was rat poison), and the "inordinate amount of chemicals being injected into the ceiling of the unit beneath [his]" and vapors that leach into his unit because of code violations. (ECF No. 13 at 1-2.).

As the Court instructed D'Angelo in explaining the decision to unseal this case, "one of the essential qualities of a Court of Justice [is] that its proceedings should be public." September Memorandum, 2025 WL 2724385 at *4 (quoting *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quotation omitted)). To that end, Federal Rule of Civil Procedure 10(a) requires parties to a lawsuit to identify themselves in their respective pleadings. *Id.* (citing *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir.1992). "Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Id*. (citing *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). There is no cause to permit the use of a pseudonym based on D'Angelo's allegations, which are at best fanciful

13

and, other that the allegation about work emails, appear unconnected to his dispute with the School District of Philadelphia. Since he no longer is employed at the School District, past alleged eavesdropping on his work emails is also not grounds to grant the relief.

## VI.     CONCLUSION

For these reasons, the Amended Complaint will be dismissed and the motion to use a pseudonym will be denied. An order follows providing D'Angelo with additional information about filing a second amended complaint.[4]

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**

---

[4] The Order will also deny a superfluous motion to proceed *in forma pauperis* (ECF No. 10) since the Court has already granted this relief. A motion to excuse late filing (ECF No. 11) will be denied as moot.

14